# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                      Case No. 08-CR-172

**RONALD EVANS**
    **Defendant.**

## SENTENCING MEMORANDUM

The government indicted defendant Ronald Evans on a charge of distributing 50 grams or more of crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). Pursuant to a plea agreement with the government, defendant pleaded guilty to an information charging him with using a telephone to facilitate a felony drug offense, contrary to 21 U.S.C. § 843(b), and I set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for my determinations.

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 30 based on a drug weight of 73 grams of crack cocaine. U.S.S.G. § 2D1.1(c)(5). Although defendant entered a timely guilty plea to the charge, the PSR denied a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 based on defendant's repeated violation of pre-trial release conditions. The PSR then set a criminal history category of II, producing an imprisonment range of 108-

135 months. However, because the statutory maximum under 21 U.S.C. § 843(b) is 4 years, the guideline range became 48 months under U.S.S.G. § 5G1.1(a).

Defendant made two objections to the PSR. First, he objected to the base offense level in the report, asking me to use a 1:1 crack to powder cocaine ratio. Under Kimbrough v. United States, 552 U.S. 85 (2007) and its progeny the court may use a 1:1 ratio in imposing sentence under § 3553(a), but the first step in sentencing is to correctly calculate the guidelines, which have not been amended to 1:1. Defendant did not contest the drug weight figure set forth in the PSR, and the report correctly calculated the base level under U.S.S.G. § 2D1.1(c)(5) using that weight.

The second objection was to the PSR's denial of the acceptance of responsibility reduction. Under U.S.S.G. § 3E1.1(a), if the defendant clearly demonstrates acceptance of responsibility for his offense, the court will decrease the offense level by 2.[1] Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable, constitutes significant evidence of acceptance of responsibility. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to a reduction as a matter of right. U.S.S.G. § 3E1.1 cmt. n.3. Application note 1 to the guideline lists a variety of factors for the court to consider, including voluntary termination or withdrawal from criminal conduct or associations. U.S.S.G. § 3E1.1

---

[1] If the defendant qualifies for this decrease, the court may grant a third level reduction on the government's motion if the defendant timely notified authorities of his intent to plead. U.S.S.G. § 3E1.1(b).

2

cmt. n.1(b). The defendant bears the burden of showing that he is entitled to a reduction. See, e.g., United States v. Silvious, 512 F.3d 364, 370 (7th Cir. 2008).

In the present case, as the PSR detailed and defendant essentially conceded, defendant violated his conditions of pre-trial release, which included a home detention condition, in serious ways: he falsified his daily activity logs, submitted fictitious hospital excuses when out of range, and provided fraudulent employment verification to pre-trial services by having an imposter pose as his employer. He used the phony hospital excuses to cover his being out of range for substantial periods of time, and the imposter employer to cover the fact that he had been unemployed for about a month. It was not clear what he was doing during his time out of range, but it was clear that he had not demonstrated acceptance. Courts have held that significant violations of pre-trial release conditions may warrant denial of the reduction under § 3E1.1, see, e.g., United States v. McDonald, 22 F.3d 139, 142-44 (7th Cir. 1994); United States v. Hooten, 942 F.2d 878, 883 (5th Cir. 1991), and I so found here.[2]

Defendant noted that the violations were unrelated to his offense of conviction, but the district court may consider any behavior of the defendant relevant to his acceptance of responsibility, including termination of both criminal conduct and non-criminal behavior inconsistent with acceptance, see United States v. Kirkland, 28 F.3d 49, 51 (7th Cir. 1994); such behavior need not be "related to the offense of conviction to support the denial of acceptance points." United States v. Sellers, 595 F.3d 791, 794 (7th Cir. 2010); see also McDonald, 22 F.3d at 141 ("As several courts have noted, the broad language of Note 1(b)

---

[2] As the government noted at sentencing, when confronted by the probation officer defendant refused to admit his lies and stated that he would sit in jail until his sentencing a few weeks later because he expected to receive probation. The government further noted that defendant's conduct may have violated 18 U.S.C. § 1001.

3

indicates that the criminal conduct or associations referred to relate not only to the charged offense, but also to criminal conduct or associations generally."). Defendant stressed that he had entered a timely guilty plea and admitted his conduct, but as noted above, there is no entitlement to a reduction based simply on a plea. Defendant's post-plea conduct outweighed the earlier suggestion that he had accepted responsibility.

Finally, I noted that even if I granted the reduction, defendant's guideline range remained well above the statutory maximum, so this dispute did not alter the final range under § 5G1.1. Further, I could (and did) consider defendant's conduct under § 3553(a).

For these reasons and those stated on the record, I adopted the PSR's factual statements and guideline calculations. I turned then to imposition of sentence under § 3553(a).

## II.  SENTENCE

### A.    Section 3553(a) Factors

Section 3553(a) directs the district court to consider the following factors in imposing sentence:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

4

>    (4)    the advisory guideline range;
>
>    (5)    any pertinent policy statements issued by the Sentencing Commission;
>
>    (6)    the need to avoid unwarranted sentence disparities; and
>
>    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. While the district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it must consider the parties' arguments and determine an appropriate sentence without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.    Analysis**

    **1.    The Offense**

This case arose out of the government's investigation of a large-scale cocaine trafficking organization on the north-side of Milwaukee, headed by a man named Shawn Terry. The investigation revealed that defendant supplied cocaine to Philander Barfield, as associate of Terry's. The specific count of conviction arose out of a December 19, 2007 transaction, in which an informant bought 73 grams of crack from Barfield. Prior to the transaction, Barfield called defendant and arranged the delivery of the 73 grams, which was sold to the informant for $2250.

5

### 2. The Defendant

Defendant was thirty-one years old, with a fairly serious prior record, one which demonstrated that he could not stay out of trouble, even while under criminal justice supervision. He sustained a juvenile adjudication for unlawful firearm possession in 1995. He was then arrested (as an adult) for possession with intent to deliver cocaine in 2006, for which he received a 1 year jail sentence in 2008. He was then charged with receiving an illegal article as an inmate in 2008, while serving the jail sentence on the cocaine case. He committed the instant offense in December 2007, while the previous cocaine case was pending.

The record contained some positives. Defendant married in 2006, and he and his wife had a son, age nine. His wife remained supportive and indicated that defendant treated her child from a previous relationship as his own. Defendant's grandmother, who raised him, indicated that he helped her. Defendant admitted past use of marijuana, but all screens on pre-trial release were negative. He made some efforts at furthering his education after dropping out of school, as set forth in ¶¶ 153-54 of the PSR, and had some work record, as set forth in ¶¶ 155-57 of the PSR.

But these positives were largely outweighed by defendant's violations of his pre-trial release conditions. As discussed above, and as set forth in ¶¶ 8 and 120 of the PSR, defendant falsified his daily activity logs, submitted fictitious hospital excuses when out of range, and provided fraudulent employment verification to pre-trial services by having an imposter pose as his employer. Pre-trial services was unable to determine what he was doing when out of range. I found it remarkable that defendant would engage in this conduct given the favorable plea agreement the government offered him. This conduct demonstrated serious disrespect for the law.

6

### 3. The Guidelines and Purposes of Sentencing

The guidelines called for 48 months' imprisonment, which corresponded to the statutory maximum, and the government recommended such a sentence. While I agreed that prison was necessary to satisfy the purposes of sentencing, I found a somewhat lesser sentence sufficient. However, I found defendant's suggestion of probation insufficient.

In considering the type of sentence needed to provide just punishment, I acknowledged that this was a crack case. Based on defendant's prior conviction and his violation of pre-trial release, the government did not support use of a 1:1 crack to powder ratio in this case, as previously suggested in the plea agreement. But Kimbrough is not necessarily limited to first offenders. Further, both defendant's prior case and this case involved fairly modest amounts, around two ounces each time. The record contained no indication that defendant was a large-scale dealer. Nor did the record contain evidence of the other harmful effects thought to be associated with crack dealing, which originally prompted the harsher penalties – no weapons, violence, other harmful secondary effects. Thus, while I am not required to treat crack and powder equally based on the flaws in the guidelines, see United States v. Corner, 598 F.3d 411, 416 (7th Cir. 2010), in the present case I took this factor into account. If the case had involved powder cocaine, the range would have been 24-30 months.

Promotion of respect for the law and deterrence were important factors here. This was defendant's second drug offense; he committed this crime while awaiting trial in the first case; and, as discussed, he committed egregious violations of his bond conditions while awaiting sentencing in this case, despite the very favorable plea agreement he had with the government. I found that supervision in the community would not suffice to deter him or to protect the public from further drug trafficking offenses. Even while he was in jail on the previous cocaine case,

7

he continued to violate the law by possessing contraband.

Under all the circumstances, I found a sentence of 24 months sufficient but not greater than necessary. This sentence acknowledged the crack-powder cocaine disparity in the guidelines and the fact that defendant had entered a guilty plea, saving the court and the government the time and expense of a trial, while also accounting for the aggravating factors discussed above. The sentence was based on § 3553(a) and would have been the same regardless of my findings on the disputed guideline issues.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months. On release, I ordered him to serve a 1 year term of supervised release, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 4th day of June, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge